## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| STEPHEN BURRELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 1:18-cv-174 |
| METROPOLITAN LIFE | § | |
| INSURANCE COMPANY,  and | § | |
| DELOITTE LLP | § | |
| | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

## PRELIMINARY STATEMENT

Plaintiff STEPHEN BURRELL, hereinafter referred to as "Plaintiff," brings

1.      This ERISA action against Metropolitan Life Insurance Company, in its capacity as Administrator of the Deloitte LLP Long Term Disability Plan, and Deloitte LLP hereinafter referred to as "Defendants".  Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant.  Plaintiff is covered under the policy by virtue of his employment with Deloitte LLP.

## PARTIES

2.      Plaintiff is a citizen and resident of Austin, Texas.

3.      Defendant is a properly organized business entity doing business in the State of Texas.

4.     The disability plan at issue in the case at bar was funded and administered by Defendant.

5.     Defendant Metropolitan Life Insurance Company has been served and has filed an answer.

6.     Deloitte LLP is a business entity doing business in the Western District of Texas.  Defendant may be served with process by serving the location at 1111 Bagby Street, Suite 4500, Houston, Texas  77002.

## JURISDICTION AND VENUE

6.     This court has jurisdiction to hear this claim pursuant to 28 U.S.C. ' 1331, in that the claim arises under the laws of the United States of America.  Specifically, Plaintiff brings this action to enforce his rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

7.     Venue in the Western District of Texas is proper by virtue of Defendant doing business in the Western District of Texas.   Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."  29 U.S.C. § 1132(e)(2).  Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*)   "District courts within the Fifth

2

Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979*). See Sanders v. State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993).  The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant.  *Varsic*, 607 F.2d at 248."  *See Frost v. ReliOn, Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007).  Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States.  See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan, 97 F.3d 822, 825-26 (5th Cir. 1996)*, citing *Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994)*.  Here, Defendant is "found" within the Western District of Texas, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## CONTRACTUAL AND FIDUCIARY RELATIONSHIP

8.    Plaintiff has been a covered beneficiary under a group disability benefits policy issued by Defendant at all times relevant to this action.  Said policy became effective January 1, 2012.

9.    The disability policy at issue was obtained by Plaintiff by virtue of Plaintiff's employment with Deloitte LLP at the time of Plaintiff's onset of disability.

10.    Under the terms of the policy, Defendant administered the Plan and

retained the sole authority to grant or deny benefits to applicants.

11.     Defendant funds the Plan benefits.

12.     Because the Defendant both funds the plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

13.     Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's abuse of discretion.

14.     Except as stated in paragraph 15 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

15.     In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a *de novo* standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

16.     However, discretionary clauses are viewed unfavorably by many states. Several states, including Texas, have enacted statutes or regulations preventing plans from relying on an abuse of discretion standard of review.  At least 23 states have enacted bans or restrictions on discretionary provisions in health and/or disability insurance policies.  States with bans include: Alaska, Arkansas, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Maine, Michigan, Minnesota, Montana, New Hampshire, New Jersey, New York, Oregon, Rhode Island, Texas, South Dakota, Utah, Vermont, Washington, and Wyoming.

4

17.     ERISA does not preempt state bans on discretionary clauses because of the "savings clause."  ERISA preempts "any and all State laws insofar as they …relate to any employee benefit plan." The "savings clause," however, preserves "any law …which regulates insurance…".  To fall within the savings clause, a state law must: Be "specifically directed toward entities engaged in insurance" and "substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

18.     In Texas, for disability insurance policies, certificates or riders offered, issued, renewed or delivered on or after February 1, 2011 said "discretionary clauses" are prohibited under 1701.062(a) Texas Insurance Code.

19.     Further, for disability insurance policies issued prior to February 1, 2011 that do not contain a renewal date, said discretionary clause prohibition applies after June 1, 2011 upon any rate increase or any change, modification or amendments on or after June 1, 2011.

20.     Plaintiff contends that the Plan fails to give the Defendant said discretion as said discretionary language is prohibited under 1701.062(a) Texas Insurance Code.

21.     Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

## ADMINISTRATIVE APPEAL

22.     Plaintiff is a 49 year old man previously employed by Deloitte LLP as a "Billing Analyst."

23.    Billing Analyst is classified under the Dictionary of Occupational Titles as Sedentary with an SVP of 7 and considered to be skilled work.

24.    Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on April 8, 2015 as on this date Plaintiff suffered from chronic fatigue syndrome, fibromyalgia, myalgia/mytosis, Epstein-Barr virus, pain in his joints, testicular hypofunction, vitamin B-12 deficiency, constipation with abdominal pain, irritable bowel syndrome (IBS), headaches, Hashimoto's disease, insomnia, memory loss and anxiety.

25.    Plaintiff alleges that he became disabled on April 9, 2015.

26.    Plaintiff filed for short term disability benefits with Defendant.

27.    Short term disability benefits were denied on May 4, 2015.

28.    Plaintiff filed for long term disability benefits through the plan administered by the Defendant.

29.    On July 28, 2016, Defendant denied long term disability benefits under the Plan.  Said letter allowed Plaintiff 180 days to appeal this decision.

30.    At the time Defendant denied Plaintiff long term disability benefits, the disability standard in effect pursuant to the Plan was that Plaintiff must be considered unable to perform his "Own Occupation."

31.    If granted the Plan would pay monthly benefit of $3,259.80.

32.    On January 24, 2017, Plaintiff pursued his administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

33.    Plaintiff timely perfected his administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

6

34.     Plaintiff submitted additional information including medical records to show that he is totally disabled from the performance of both his own and any other occupation as defined by the Plan.

35.     Additionally, the Social Security Administration issued a fully favorable decision on Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, finding that Plaintiff is "disabled" during the relevant time period. Notably, the SSA's definition of disability is significantly more restrictive than Defendant's as they require the claimant to be unable to work in "any occupation in the National Economy."

36.     Defendant was provided documentation of the Social Security Administration's finding that Plaintiff was found to be totally disabled under Title II and Title XVI of the Social Security Act.

37.     On or about April 27, 2015, Defendant's internal consultant, Dupe Adewunmi, M.D., MPH, family, occupational and environmental medicine, performed a paper review of Plaintiff's claim file.

38.     On or about May 14, 2015, Defendant's internal consultant, Dupe Adewunmi, M.D., MPH, family, occupational and environmental medicine, prepared an addendum to his paper review of Plaintiff's claim file.

39.     On or about July 26, 2015, Defendant's paid consultant, Brooke Worster, M.D., internal medicine, performed a paper review of Plaintiff's claim file.

40.     On or about June 27, 2016, Defendant's paid consultant, Lucien J. Parrillo, M.D., MPH, internal medicine, performed a peer review of Plaintiff's claim file.

41.     On or about February 23, 2017, Defendant's paid consultant, Kevin Trangle, M.D., MBA, occupational medicine and internal medicine, performed a paper review of Plaintiff's claim file.

42.     There is an indication that a "Tracy Barber, DO" reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

43.     There is an indication that a "Jo Ann Robinette, RN, ABDA, AD" reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

44.     There is an indication that a "Scott Soud, MS" reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

45.     There is an indication that a "Diane Turkowski, RN, CLNC" reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

46.     Defendant's consultants completed their reports without examining Plaintiff.

47.     On April 18, 2017, Defendant notified Plaintiff that Defendant affirmed its original decision to deny Plaintiff's claim for long term disability benefits.

48.     Defendant also notified Plaintiff on April 18, 2017 that Plaintiff had exhausted his administrative remedies.

49.     Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on his ability to engage in work activities.

50.     Plaintiff has now exhausted his administrative remedies, and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

51.    Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

52.    Plaintiff suffers from chronic fatigue syndrome, brain fog, undiagnosed thyroid condition, inflammation of the joints, knees, elbows and back, a vitamin B-12 deficiency, digestive problems, and Epstein-Barr virus.

53.    Treating physicians document continued chronic pain, radicular symptoms, as well as decreased range of motion and weakness.

54.    Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed his ability to engage in any form of exertional activity.

55.    Further, Plaintiff's physical impairments have resulted in chronic pain and discomfort.

56.    Plaintiff's treating physicians document these symptoms.  Plaintiff does not assert that he suffers from said symptoms based solely on his own subjective allegations.

57.    Physicians have prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address his multiple symptoms.

58.    However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

59.     Plaintiff's documented pain is so severe that it impairs his ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full time basis, meaning an 8 hour day, day after day, week after week, month after month.

60.     Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

61.     The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

62.     As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

63.     However, after exhausting his administrative remedies, Defendant persists in denying Plaintiff his rightfully owed disability benefits.


**<u>DEFENDANT'S CONFLICT OF INTEREST</u>**

64.     At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

65.     Defendant's determination was influenced by its conflict of interest.

66.     Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

67.     The long term disability Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

68.     A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

69.     More information promotes accurate claims assessment.

70.     Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

## COUNT I:
## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

71.     Plaintiff incorporates those allegations contained in paragraphs 1 through 70 as though set forth at length herein

72.     Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

    a.     Plaintiff is totally disabled, in that he cannot perform the material duties of his own occupation, and he cannot perform the material duties of any other occupation which his medical condition, education, training, or experience would reasonably allow;

    b.     Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

    c.     Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

    d.     Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

11

## COUNT II:  ATTORNEY FEES AND COSTS

73.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 72 above.

74.     By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees.  Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A.     Grant Plaintiff declaratory relief, finding that he is entitled to all past due short term and long term disability benefits yet unpaid;

B.     Order Defendant to pay past short term and long term disability benefits retroactive to October 8, 2015 to the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C.     Order Defendant to remand claim for future administrative review and continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

12

D.     Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E.     For such other relief as may be deemed just and proper by the Court.


Dated:  Houston, Texas
        August 3, 2018


                              Respectfully submitted,

                              MARC WHITEHEAD & ASSOCIATES,
                              ATTORNEYS AT LAW L.L.P.


                              By:     _/s/ J. Anthony Vessel ___
                                      J. Anthony Vessel
                                           Tex. Bar. No. 24084019
                                           Fed. I.D. No. 1692384
                                           anthony@marcwhitehead.com
                                      Marc S. Whitehead
                                           Tex. Bar No. 00785238
                                           Fed. I.D. No. 15465
                                           marc@marcwhitehead.com

                                      5300 Memorial Drive, Suite 725
                                      Houston, Texas 77007
                                      Telephone: 713-228-8888
                                      Facsimile: 713-225-0940
                                      ATTORNEY-IN-CHARGE
                                      FOR PLAINTIFF,
                                      STEPHEN BURRELL