**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **STEPHEN BURRELL,** | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL NO. 1:18-CV-174-RP** |
| **v.** | § | |
| | § | |
| **METROPOLITAN LIFE INSURANCE** | § | |
| **COMPANY and DELOITTE LLP,** | § | |
| *Defendants.* | | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court are cross-motions for summary judgment filed on June 21, 2019 by each of

the parties: Defendant Deloitte LLP ("Deloitte") (Dkt. 34), Defendant Metropolitan Life Insurance

Company ("MetLife") (Dkt. 37), and Plaintiff Stephen Burrell ("Burrell") (Dkt. 39).

On October 4, 2019, the District Court referred the above motions to the undersigned for

Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil

Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the U.S. District Court for the

Western District of Texas. Dkt. 47.

## I.     Background

This is an action for disability benefits under the Employee Retirement Income Security Act

of 1974, as amended, 29 U.S.C. §§ 1001-461 ("ERISA"). Burrell is a former Billing Analyst with

Deloitte. He asserts a single cause of action for wrongful denial of benefits against Deloitte and

MetLife, in its capacity as administrator of the Deloitte Long Term Disability Plan. (Together,

Deloitte and MetLife are referred to as "Defendants.")

Burrell alleges the following facts in his Amended Complaint: On April 8, 2015, Burrell ceased working at Deloitte due to chronic fatigue syndrome, fibromyalgia, myalgia/myositis, Epstein-Barr virus, pain in his joints, testicular hypofunction, vitamin B-12 deficiency, constipation with abdominal pain, irritable bowel syndrome (IBS), headaches, Hashimoto's disease, insomnia, memory loss, and anxiety. Dkt. 12 ¶ 24. These conditions cause chronic pain and severely limited range of motion, and significantly curtail Burrell's ability to engage in any exertional activity. *Id.* ¶¶ 52-54. Burrell's pain is "so severe that it impairs his ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, meaning an 8[-]hour day, day after day, week after week, month after month." *Id.* ¶ 59. His medications also cause side effects that affect his ability to work, including "sedation and cognitive difficulties." *Id.* ¶ 60. Burrell alleges that he became disabled on April 9, 2015, the day after he ceased working. *Id.* ¶ 25. He filed for short-term disability benefits, which were denied on May 4, 2015. *Id.* ¶¶ 26-27. He then filed for long-term disability benefits, which were denied on July 28, 2016. *Id.* ¶ 29. Burrell requested administrative review, and the denial of benefits was affirmed. *Id.* ¶¶ 32, 47.

Burrell first filed this action for wrongful denial of benefits against MetLife alone, seeking to recover short term and long term disability benefits "to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant." Dkt. 1 ¶ 1. Burrell then filed an Amended Complaint adding Deloitte and maintaining the same claims. Dkt. 12. Burrell seeks (1) declaratory judgment "that he is entitled to all past due short term and long term disability benefits yet unpaid," (2) retroactive payment for all short term and long term disability benefits from October 8, 2015 to the present, and (3) an order directing "Defendant to remand claim for future administrative review and continue to make future long term disability payments . . . until such time as Defendant makes ad adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan." *Id.*

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution could affect the outcome of the action." *Dean v. Phatak*, 911 F.3d 286, 291 (5th Cir. 2018). When reviewing a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002). The nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim. *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164

(5th Cir. 2006). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000).

Where, as here, "parties file cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (quoting *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013)).

## B. ERISA

ERISA confers jurisdiction on federal courts to review benefit determinations by plan administrators. *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (per curiam) (citing 29 U.S.C. § 1132(a)(1)(B)). ERISA authorizes a civil action by a plan participant or beneficiary "to recover benefits due to him under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 (5th Cir. 1998) (citation omitted). To maintain a claim under 29 U.S.C. § 1132(a)(1)(B), "the claimant must show that he or she "qualif[ies] for the benefits provided in that plan." *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 348 (5th Cir. 2016) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008)). Insurance claim administrators make two decisions when deciding whether to pay benefits: (1) finding the facts underlying the claim, and (2) determining whether those facts establish a claim under the terms of the plan. *Firman*, 684 F.3d at 538 (citations omitted).

"When an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion." *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 247 (5th Cir. 2018)

(en banc) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "For plans that do not have valid delegation clauses, the Supreme Court has held that 'a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard.'" *Id.* (quoting *Firestone*, 489 U.S. at 115). Standard summary judgment rules control in ERISA cases. *Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023, 1026 (5th Cir. 2015).

## III.     The Claims Against Each Defendant

Before addressing the merits of each motion for summary judgment, the Court must clarify which claims Burrell asserts against each Defendant.[1] In his Amended Complaint, Burrell asserts claims for both Short Term Disability ("STD") and Long Term Disability ("LTD") benefits. Dkt. 12 at 1, 12. But the Amended Complaint does not allege specific conduct by either MetLife or Deloitte. Instead, it refers repeatedly to "Defendant" in the singular. As a result, the Amended Complaint does not make clear whether Burrell seeks to enforce his claim for STD and LTD benefits against both Deloitte and MetLife, or if he asserts different liability for each of the defendants. Deloitte and MetLife note this in their motions for summary judgment. Dkt. 34 at 5-6; Dkt. 37 at 7. Burrell's Motion for Summary Judgment reflects the same issue. His motion uses the singular "Defendant" again, moves for judgment only against MetLife, and addresses only the LTD benefits. *See* Dkt. 39. Burrell's motion does not brief Deloitte's liability at all.

Deloitte and MetLife agree, however, that Deloitte is responsible for the STD benefits, while MetLife is responsible for the LTD benefits. Dkt. 34 at 5-6; Dkt. 37 at 7. Their motions for summary judgment reflect that division of responsibility. Although neither Deloitte nor MetLife

---

[1] Appropriate defendants under ERISA include the employer, the employee benefit plan, "the party that controls administration of the plan," and third-party administrators who take on the responsibilities of the administrator. *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 845 (5th Cir. 2013) (quoting *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010)); *Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349 (5th Cir. 2003).

cites any legal authority in support,[2] Burrell does not dispute this in any of his briefing. Because the Defendants agree and Burrell states no opposition, the Court construes Burrell's submissions to assert a claim for STD benefits against Deloitte and LTD benefits against MetLife.

Deloitte moves for summary judgment with respect to the STD benefits. Dkt. 34. MetLife moves for summary judgment with respect to the LTD benefits. Dkt. 37.[3] Burrell moves for summary judgment against MetLife with respect to the LTD benefits. Dkt. 39. Because none of motions address both of Burrell's claims against both defendants, the Court construes each as a motion for partial summary judgment. The Court considers the motions in turn, reviewing each "independently." *Green*, 754 F.3d at 329 (quoting *Duval*, 722 F.3d at 303).

## IV.    Deloitte's Motion for Summary Judgment

Deloitte moves for summary judgment with respect to the STD benefits, arguing that Deloitte's STD plan is a payroll program excluded from ERISA coverage. Dkt. 34. In support of the motion, Deloitte attaches a declaration by Stephanie Aeder, Managing Director of Total Rewards at Deloitte (Dkt. 35-1 at 2-3); a declaration by Matthew Hallford, a MetLife Litigation Specialist (Dkt. 35-2 at 2); and MetLife's file for Burrell's Short Term Disability claim (*id.* at 3-377), which includes medical records and correspondence.

### A.  Burrell Did Not File A Response

Burrell did not file a response to Deloitte's motion. However, if the moving party fails to meet its initial burden, the court must deny the motion for summary judgment even if there is no response. *See* FED. R. CIV. P. 56(e) advisory committee's note to 1963 amendment ("Where the

---

[2] Deloitte cites no legal support for its claim that it is not a proper party to an ERISA benefits claim for LTD benefits. Dkt. 34 at 12. Likewise, MetLife argues, without citing authority, that "[b]ecause MetLife is not responsible for the payment of STD benefits, MetLife cannot be liable for the benefits." Dkt. 37 at 7.

[3] MetLife does not brief the STD benefits, but adopts and incorporates Deloitte's Motion for Summary Judgment and brief in support. Dkt. 37 at 7.

evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."); *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) ("We have recognized the power of district courts to adopt local rules requiring parties who oppose motions to file statements of opposition. But we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation.") (cleaned up); *Barrientos v. Mikatsuki Int'l, Inc*., No. 1:18-CV-934-RP, 2019 WL 5784178, at *1 (W.D. Tex. Nov. 6, 2019) ("[S]ummary judgment is not automatic.").

If a non-moving party fails to respond to a motion for summary judgment, the Court may accept the movant's uncontroverted factual assertions as true. *Eversley v. MBank of Dall*., 843 F.2d 172, 174 (5th Cir. 1988). The Court therefore accepts the undisputed facts in Deloitte's motion as true.

## B. Analysis

Deloitte argues that Burrell has no viable ERISA claim for Short Term Disability benefits because the STD plan is a payroll program, not an employee benefit plan governed under ERISA. Dkt. 34 at 15 (citing 29 C.F.R. § 2510.3-1(b)(2)).

Department of Labor regulations exclude certain payroll practices from ERISA coverage under a "safe harbor" provision. *Parker v. Cooper Tire & Rubber Co*., 546 F. App'x 522, 528 (5th Cir. 2014) (citing 29 C.F.R. § 2510.3–1(b)(2)). The Fifth Circuit has called this "the payroll practices exemption." *Id.* Under that exemption, "[a]n ERISA plan shall not include '[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons.'" *Parker*, 546 F. App'x at 529 (quoting 29 C.F.R. § 2510.3-1(b)(2)). To determine whether an employee benefit plan qualifies as an ERISA plan, the Fifth Circuit considers whether: "(1) the plan exists; (2) the plan falls within the safe-harbor provision established by the Department of Labor; and (3) the employer established or

maintained the plan with the intent to benefit employees." *Id.* at 527-28 (applying test to a payroll benefit program) (quoting *Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 439 (5th Cir. 2006)).

### 1. Whether the Plan Exists

No party disputes the existence of the STD Plan. Deloitte provides a copy of the complete 2014 Short Term Disability policy through which Burrell applied. Dkt. 35-1 at 5-15 (App. 1-11).

### 2. Whether the Plan Falls Within the Safe Harbor Provision

Viewing the evidence in the light most favorable to Burrell, the STD plan falls within the payroll practice exemption. *See Parker*, 546 F. App'x at 529 (quoting 29 C.F.R. § 2510.3-1(b)(2)). First, uncontroverted evidence indicates that the STD plan was paid as part of an employee's normal compensation. The terms of the 2014 STD Policy provide that "[t]here is no need to enroll for STD benefits. If you meet the eligibility requirements . . . coverage is automatic." Dkt. 35-1 at 7 (App. 3). A salaried employee who works at least 20 hours per week is eligible. *Id.* at 5 (App. 2). Aeder also testifies that "[e]ligible employees are automatically enrolled in the STD Program at no cost to the employees." Dkt. 35-1 ¶ 3. Second, the evidence indicates that Deloitte paid for the STD program through general assets. The Policy states that "STD benefits are provided by the Deloitte U.S. Firms at no cost to you." Dkt. 35-1 at 7 (App. 3). Aeder testifies that "Deloitte pays the STD benefits from its general assets." Dkt. 35-1 ¶ 3. Third, the terms of the policy indicate that the STD plan covers periods of time when an employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons: "[STD] benefits . . . provide you with income replacement during times when you are unable to work because of a Disability." *Id.* at 6 (App. 2).[4]

---

[4] The policy defines "Disability" as "an illness, injury, physical condition (including pregnancy) or mental condition that: Lasts more than seven (7) consecutive calendar days . . . during which period you are unable to perform your job functions; Requires ongoing treatment or supervision by a health care provider; and Prevents the continued performance of your job functions." Dkt. 35-1 at 8 (App. 4).

Where a court finds that a benefit falls within the safe harbor provision, it need not proceed to consider the third element to determine whether an employee benefit plan qualifies as an ERISA plan. *See Parker*, 546 F. App'x at 529.

## C. Conclusion

Deloitte's uncontroverted evidence demonstrates that the STD plan is a payroll practice and therefore not an ERISA plan. 29 C.F.R. § 2510.3–1(b)(2)). No reasonable trier of fact could conclude that Burrell is entitled to the STD benefits under ERISA. The undersigned therefore **RECOMMENDS** that the District Court **GRANT** Deloitte's Motion for Partial Summary Judgment with respect to Burrell's claim for Short Term Disability benefits.

## V.  MetLife's Motion for Summary Judgment

In its Motion for Summary Judgment, MetLife argues that it properly denied Burrell's claim for long term disability benefits because the medical documentation did not support that Burrell was disabled during the relevant period. Dkt. 37 at 4. In support of its motion, MetLife relies on a declaration by Litigation Specialist Hallford and the administrative record for Burrell's LTD and STD claims. Burrell filed a response, disputing the standard of review for MetLife's claim determination and arguing that the denial of benefits was not supported by substantial evidence. Dkt. 42. MetLife filed a reply. Dkt. 44. The Court first addresses the proper standard of review, then turns to MetLife's claim determination.

## A. The Standard of Review

"When an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion." *Ariana M.*, 884 F.3d at 248; *see also Rittinger v. Healthy All. Life Ins. Co.*, 914 F.3d 952, 955 (5th Cir. 2019). When a plan does not delegate discretion to a plan administrator validly, a court reviews denial of benefits de novo. *Id.* at 255-56 (adopting de novo review for a denial of

benefits on any ground, unless the benefit plan gives the administrator discretionary authority) (citing *Firestone*, 489 U.S. at 115).

The parties dispute which standard applies here. The LTD Plan grants MetLife "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits," and provides that "[a]ny interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious." Dkt. 38-2 at 51 (App. 439). MetLife argues that this provision controls and that this court must review the claim determination for abuse of discretion. Dkt. 37 at 5-6.

Burrell counters that the delegation clause is invalid because Texas prohibits discretionary clauses in insurance policies. Dkt. 42 at 2-3; TEX. INS. CODE § 1701.062(a); 28 TEX. ADMIN. CODE §§ 3.1202-03. MetLife responds that Texas law does not govern the LTD Plan because it contains a New York choice of law provision (Dkt. 38-3 at 58 (App. 721)), Deloitte's Group Policy is issued in Connecticut (Dkt. 38-2 at 49 (App. 437)); Dkt. 38-1 ¶ 4 (Hallford Decl.)), and neither state bans discretionary provisions (Dkt. 37 at 5-6 (citing STATE OF CONNECTICUT INSURANCE DEPARTMENT BULLETIN HC-67 (March 19, 2008))). MetLife does not provide legal authority on this point of New York law, but Burrell does not dispute it and the Court is unaware of authority to the contrary.

Federal common law governs choice of law in an ERISA case. *Singletary*, 828 F.3d at 351 (citing *Jimenez v. Sun Life Assurance Co.*, 486 F. App'x 398, 407 (5th Cir. 2012) (per curiam)). The Fifth Circuit has not yet adopted a specific test to decide "residual choice of law disputes in the ERISA context." *Id.* at 351 (citing *Jimenez*, 486 F. App'x at 406). In both *Singletary* and *Jimenez*, the Fifth Circuit observed that under federal common law, there are "three possible approaches to resolving this choice of law issue," but declined to choose among these competing

standards because both Singletary and Jimenez "failed to satisfy [their respective] burdens to establish that we should not enforce the Policy's choice of law clause under any standard." *Singletary*, 828 F.3d at 351 (quoting *Jimenez*, 486 F. App'x at 408). The party opposing a choice of law provision bears the burden of proving that it should not be enforced. *Id.* (citing *Jimenez*, 486 F. App'x at 408).

Burrell faces the same problem here. He argues that Texas law applies despite the contrary choice of law provisions because Texas has "the greatest substantial interest": "[T]his case is being decided within its courts," Burrell resides in Texas, and the Defendants do business in Texas. Dkt. 42 at 3-4. But Burrell cites no federal authority in support of his argument.[5] Burrell has not met his burden to establish that this court should not enforce the LTD choice of law clause under any federal common law standard.

The Court concludes that because the parties' choice of law is either New York or Connecticut and neither bans discretionary clauses, the LTD Plan validly delegates discretion to MetLife. *See Rittinger*, 914 F.3d at 955 ("[E]ven though Texas Insurance Code § 1701.062 bans insurers' use of delegation clauses in Texas, Missouri law governs this case."). The Court therefore reviews MetLife's denial of benefits deferentially for abuse of discretion.[6]

---

[5] Because federal common law governs this question, Burrell's reliance on *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014), is misplaced. Even if Texas law applied to the choice of law question, Burrell addresses only the "substantial relationship" element of the Texas test; he does not address whether "there is no other reasonable basis for the parties' choice" or whether "the law of the chosen state would be contrary to the fundamental policy of a state which has materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of applicable law in the absence of an effective choice of law." *Id.* (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)); *DeSantis v. Wackenhut Corp*., 793 S.W.2d 670, 677 (Tex. 1990) (adopting the RESTATEMENT framework)).

[6] Courts refer to the "abuse of discretion" and "arbitrary and capricious" standard interchangeably. "There is only a semantic, not a substantive, difference between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context." *Anderson v. Cytec Indus., Inc*., 619 F.3d 505, 512 (5th Cir. 2010) (quoting *Meditrust Fin. Servs. v. Sterling Chemicals, Inc*. 168 F.3d 211, 214 (5th Cir. 1999)) (cleaned up).

**B. The Abuse of Discretion Standard**

A plan administrator

> abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial. Yet [i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail. Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Rittinger*, 914 F.3d at 956 (cleaned up). This review is deferential to the plan administrator: "We only need 'assurance that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end.'" *Id.* at 957-58 (quoting *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 140 (5th Cir. 2016) (cleaned up)). An ERISA claimant bears the burden to show that the administrator abused its discretion. *Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 808 (5th Cir.), *cert. denied*, 140 S. Ct. 186 (2019).

**C. Undisputed Facts**

None of the material facts are disputed.

**1. Burrell's Application**

The LTD plan defines disability as "due to Sickness or as a direct result of an accidental injury: You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and You are unable to earn during the Elimination Period and the next 24 months . . . more than 80% of Your Presdisability Earnings at Your own job . . . ." Dkt. 38-2 at 19 (App. 407). Burrell filed a claim for LTD benefits on March 6, 2016. Dkt. 38-6 at 70 (App. 1561). Under the terms of the LTD plan, Burrell bore the burden to demonstrate his claimed disability. Dkt. 38-2 at 39 (App. 427) (requiring a claimant to submit "Proof"); *id.* at 22 (App. 410) (defining "Proof").

To evaluate his claim, MetLife conducted a telephone interview with Burrell and reviewed his supporting documentation. During the telephone interview, Burrell advised that he had returned to

work part time for approximately five hours per day and a total of 25 hours per week, but continued to struggle with concentration, energy, depression, and body inflammation. Dkt. 38-6 at 75 (App. 1566). MetLife reviewed the documentation from Burrell's STD benefit application and requested any other supporting documentation. (App. 1557). His LTD claim file contained medical records from four doctors and one nurse practitioner.

### 2. Burrell's Medical Records

Dr. Alejandra Carrasco, an Integrative Medicine practitioner, saw Burrell on March 5, 2015. Dkt. 38-6 at 29-31 (App. 1520-22). Her progress notes reported that Burrell "feels that he is struggling with everything, feels incredibly fatigued, cannot perform work duties [and] fatigue has worsened since beginning of the year." *Id.* at 30 (App. 1521). Her physical assessment found no indication of illness other than "dark circles under [his] eyes." *Id.* She assessed a diagnosis of "Fatigue" and recommended "a sabbatical from work because stress and schedule are causing severe worsening of symptoms." *Id.* When Dr. Carrasco saw Burrell again on April 9, 2015, she observed "extreme physical fatigue" and stated that Plaintiff was not able to function in his current work environment, but that he could intermittently sit for four hours of an eight-hour day, intermittently stand for two hours, and intermittently walk for two hours. Dkt. 38-6 at 114 (App. 1605). MetLife considered this "an activity level sufficient for an 8-hour workday." Dkt. 37 at 9. Dr. Carrasco assessed Burrell's range of motion and motor skills and found no physical impairments. Dkt. 38-6 at 115 (App. 1606). She reported that Burrell "can work zero hours per day" without explaining her reasoning. *Id.* She recommended a sabbatical and advised that he would be able to return to work in three months. *Id.*

Dr. Carrasco wrote a letter advising that Burrell was seeking short term disability leave for "long-standing fatigue." Dkt. 38-5 at 184 (App. 1399); Dkt. 38-6 at 117 (App. 1608). She summarized his medical history, including symptoms of extreme fatigue "that significantly

interferes with work and daily activities," muscle aches, poor sleep, recurring sore throat, headaches, impairment of memory and concentration, and with "fatigue of greater than one year" that supported a diagnosis of chronic fatigue syndrome. *Id.* She reported that she "believe[s] that he needs several months of rest (free of the duties of his job) to recuperate." *Id.* MetLife notes that Dr. Currasco provided "no medical documentation in support of her opinion." Dkt. 37 at 9.

Dr. Carrasco referred Burrell to Dr. Wallace Taylor, an otolaryngologist and integrated medicine specialist. Dkt. 38-5 at 264-65 (App. 1479-80). Burrell saw Dr. Taylor on May 6, 2015, May 27, 2015, and June 25, 2015. Dkt. 38-5 at 264-69 (App. 1479-84). Dr. Taylor conducted lab testing for an infection, including immune markers, and a CT scan of Burrell's abdomen. *Id.* These results were all normal. Dkt. 38-5 at 270-76 (App. 1485-91); Dkt. 38-2 at 141 (App. 529). Dr. Taylor diagnosed Burrell with fatigue, irritable bowel syndrome ("IBS"), and a "disorder of the intestine." Dkt. 38-5 at 268 (App. 1483). He recommended a colonoscopy. *Id.* Dr. Carl Frank conducted a colonoscopy and reported normal results. Dkt. 38-5 at 202 (App. 1417).

Dr. Jeremy Wiseman, Burrell's primary care physician, approved a Release to Return to Work on a part-time basis for 20 hours per week beginning on July 2, 2015. Dkt. 38-5 at 186 (App. 1401). Under "Activity Restrictions," Dr. Wiseman indicated "No physical limitations." Under "Other Restrictions," Dr. Wiseman's handwriting is difficult to decipher, but he appears to write: "[please] [reevaluate] Mr. Burrell's fatigue and GI issues as needed." *Id.*

The same month, Burrell also saw Dr. Kendal Stewart and nurse practitioner Rebecca Bell for a genetic report. Dkt. 38-5 at 146 (App. 1361). Burrell again reported complaints of fatigue, headaches, gastrointestinal concerns, sleep issues, generalized anxiety disorder, chills, dizziness, fever, disrupted sleep patterns, forgetfulness, weight loss, numbness in extremities, inflammation, and focus/concentration issues. *Id.* Noting Burrell's complaints, Bell reported that "Patient appears

healthy with no notable abnormal signs of distress, mood or pain." Dkt. 38-5 at 147 (App. 1362). The results of further blood tests were overall normal. Dkt. 38-6 at 50-58 (App. 1541-49).

Burrell returned to work part-time from September 2015 to December 2015. Dkt. 38-5 at 65 (App. 1280). At a follow-up appointment with Bell on September 21, 2015, she again found "no notable abnormal signs of distress, mood or pain." Dkt. 38-5 at 142 (App. 1357). Her physical examination of Burrell found normal results, including "no obvious joint issues or limitation of movement" and normal cerebellar and neurological responses. *Id.* Bell examined Burrell on two subsequent visits on November 5, 2015, and April 14, 2016, finding the same results. Dkt. 38-5 at 138-40, 150-52 (App. 1353-55, 1365-67). At the final visit, Bell conducted no diagnostic tests and directed Burrell to follow up in five to six months. *Id.* at 151 (App. 1361).

### 3. MetLife's Claim Determination

A MetLife Nurse Consultant and Claim Specialist reviewed Burrell's records and recommended review by an independent physician. Dkt. 38-6 at 153 (App. 1644). Dr. Lucien J. Parrillo, who is Board Certified in Internal Medicine, Sports Medicine, Preventive Medicine/ Occupational Medicine, and Anesthesiology/Pain Medicine, conducted the review. Dkt. 38-5 at 124-28 (App. 1339-43); Dkt. 38-6 at 162 (App. 1653). Dr. Parrillo reviewed all of Burrell's medical records. Dkt. 38-5 at 124-28 (App. 1339-43). Dr. Parrillo concluded that, "[b]ased on the documentation provided for review, I do not find any objective evidence to support physical functional limitations beyond the [date] of 04/09/2015," which was the date he ceased working. *Id.* at 126 (App. 1341). Dr. Parrillo explained:

> The claimant notes that his physical impairments and inability to work are secondary to self-reported symptoms of fatigue. The objective clinical evidence does not correlate with these complaints. The claimant had been examined by several practitioners and there were never any objective clinical findings to support the claimant's subjective complaints. There were no neurological deficits, nor was

there any advanced imaging to support the notion that the claimant was physically impaired.

Furthermore, there were no specialty consultations to fully investigate the claimant's variety of symptoms. The claimant asserted that he had cognitive impairment, but there was no referral for formal neuropsychological testing. The claimant is purported to have some type of genetic anomaly preventing proper absorption of vitamins, but there was never a referral to a Medical Geneticist for formal evaluation. The claimant was noted to have issues with hypothyroid disease, low testosterone, and fatigue, but there was no evaluation by a board-certified Endocrinologist.

In addition, despite claims that the claimant's fatigue was debilitating, there was no further testing to fully identify other more likely causes of fatigue such as sleep apnea (no polysomnography testing performed), or a full cardiological work-up looking at valvulopathies. Lastly, the treating providers never identified the claimant's fatigue as so severe as to interfere with his daily living routine or the ability to perform personal care. There was no attempt to relinquish the claimant's driver's license, and no evidence of the claimant requiring assistance with activities of daily living.

Therefore, I submit the medical evidence contained in the record does not substantiate the claimant's reported "disability" or functional impairment as a result of his various symptoms. As a result, I opine the claimant does retain the functional ability to return to his usual occupation.

*Id.* at 126-27 (App. 1341-42). MetLife sent a copy of Dr. Parrillo's report to Burrell's attorney, Dr. Stewart, Dr. Carrasco, Dr. Taylor, and Dr. Wiseman, requesting clinical information to support their conclusions if they did not agree with Dr. Parrillo's report. Dkt. 38-5 at 102, 109, 116, 123 (App. 1317, 1324, 1331, 1338). MetLife received no response. Dkt. 38-6 at 202 (App. 1693).

MetLife advised Burrell that his LTD claim was denied, effective October 8, 2015, because he did not satisfy the definition of "Disability" under the terms of the plan. Dkt. 38-5 at 64 (App. 1279). MetLife summarized its claim review and concluded that "there has been no clinical evidence to support a disability from April 9, 2015 and beyond." Dkt. 38-5 at 66 (App. 1281).

Burrell appealed the LTD claim denial on January 24, 2017. Dkt. 38-2 at 208 (App. 596). Burrell submitted duplicate records from his original application, new office visit notes from Bell,

medical records from a new doctor, Dr. Amen, a Vocational Assessment, and Medical Affidavits from Burrell. Dkt. 38-3 at 268-76; Dkt. 38-4; Dkt. 38-5 at 1-45 (App. 931-1260).

MetLife submitted these records for review on appeal to Dr. Kevin Trangle, an independent physician and Fellow of the American College of Occupational and Environmental Medicine and the American Academy of Disability Evaluating Physicians, who is Board Certified in Internal Medicine. Dkt. 38-2 at 161 (App. 549). Dr. Trangle reviewed the records and concluded that:

> The medical information contained in the provided records failed to substantiate . . . the need for work activity restrictions that would have precluded Mr. Burrell from working in his own sedentary occupation as of 04/09/2015 and continuing.
> Instead, the records reflected a plethora of subjective symptoms purportedly affecting multiple organ systems without objective medical evidence establishing the presence of a pathological process and/or condition capable of not only explaining the symptoms but also capable of causing physical functional impairment as allege in this case.

Dkt. 38-2 at 155 (App. 543). Dr. Trangle reported that Burrell's "repeated physical examinations" by his providers were "normal." *Id.* Regarding chronic fatigue syndrome in particular, Dr. Trangle found that "Mr. Burrell's complaints and objective physical findings were consistent with this condition," but the records from his healthcare providers provided "an absence of physical findings that would explain the severe degree of his self-professed physical functional impairment and inability to work even in a sedentary capacity." *Id.* at 159 (App. 547).

MetLife again offered Burrell's attorney an opportunity to provide additional information and received no response. Dkt. 38-2 at 103 (App. 491). On April 18, 2017, MetLife upheld its original claim determination denying the LTD claim because Burrell did not demonstrate that he was unable to earn at least "80% of [his] Presdisability Earnings at [his] own job," and therefore he was not disabled under the terms of the LTD plan. *Id.* at 97-104 (App. 485-92); Dkt. 38-2 at 19 (App. 407).

**D. Analysis**

The Court must evaluate whether, in light of all the evidence relating to Burrell's claimed disability, substantial evidence supports MetLife's determination that Burrell is not disabled under the terms of the LTD plan. *Corry v. Liberty Life Assur. Co. of Bos.*, 499 F.3d 389, 401-02 (5th Cir. 2007). As noted above, substantial evidence requires "more than a scintilla" but "less than a preponderance" of evidence. *Rittinger*, 914 F.3d at 956 (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). A court needs only "assurance that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end." *Id.* at 957-58 (quoting *Burell*, 820 F.3d at 140). As an ERISA claimant, Burrell bears the burden to show that MetLife abused its discretion. *Nichols*, 924 F.3d at 808.

The Court construes the record in a light most favorable to Burrell and assumes that Burrell experienced severe and difficult symptoms just as he reported. But even on that basis, the Court finds that MetLife based its claim determination on substantial evidence because Burrell's medical records did not provide objective evidence how his symptoms prevented him from working.

Dr. Parrillo and Dr. Trangle, MetLife's consulting physicians, both found that while Burrell reported many subjective symptoms and saw a series of healthcare providers, none reported any objective physical, functional, or psychiatric impairments that would prevent Burrell from working. Although several providers diagnosed him with chronic fatigue syndrome, none specified how that condition impaired his ability to work. Dr. Carrasco's letter advising that Burrell was seeking short term disability leave stated that his extreme fatigue "significantly interferes with work and daily activities," but gave no clinical evidence to support that assessment. Dkt. 38-5 at 184 (App. 1399); Dkt. 38-6 at 117 (App. 1608). When Burrell's primary care physician, Dr. Wiseman, approved a Release to Return to Work on a part-time basis for 20 hours per week in

July 2015, he gave no explanation for that recommendation and indicated "no physical restrictions." Dkt. 38-5 at 186 (App. 1401).

A plan administrator does not abuse its discretion when it relies on an independent expert's opinion that a claimant has not offered objective clinical proof of functional limitations that indicate a disability. *See Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 513 (5th Cir. 2010). Although a claim administrator may consider a claimant's subjective complaints in its claim determination, it is not required to do so. *See Corry*, 499 F.3d at 399-401 (affirming ruling that claim determination was not arbitrary and capricious where claim administrator considered subjective complaints in disability determination); *Spenrath v. Guardian Life Ins. Co. of Am.*, 564 F. App'x 93, 98 (5th Cir. 2014) (noting that the Fifth Circuit has never held that a claim administrator must "specifically acknowledge" a claimant's subjective complaints; affirming that plan administrator did not abuse its discretion by crediting objective findings over subjective complaints).

MetLife also did not abuse its discretion by requiring objective clinical evidence that Burrell was unable to work.

> A plan administrator does not abuse its discretion by making a reasonable request for some objective verification of the functional limitations imposed by a medical or psychological condition, especially when the effects of that condition are not readily ascertainable from treatment and therapy notes—as in this case and analogous cases involving, for example, chronic fatigue syndrome.

*Anderson*, 619 F.3d at 514; *see also Corry*, 499 F.3d at 401 (affirming that opinions of three consulting physicians that no objective evidence supported plaintiff's disability claim based on chronic fatigue syndrome and fibromyalgia, among other conditions, constituted substantial evidence to support denial of her disability claim).

Where a claimant and a claim administrator rely on different expert opinions, a claim administrator "is vested with discretion to choose one side over the other." *Anderson*, 619 F.3d at 513 (quoting *Corry*, 499 F.3d at 401); *see also Simoneaux v. Cont'l Cas. Co.,* 101 Fed. Appx. 10, 12 (5th Cir. 2004) ("Continental was neither irrational nor arbitrary in failing to give overriding weight to the treating physician's statement that [the claimant] was totally disabled, a generalized statement not supported by objective medical findings.").

For a condition such as chronic fatigue syndrome, which may be difficult to diagnose definitively, a claimant may use objective clinical evidence of functional limitations to demonstrate difficulty working. *See Anderson*, 619 F.3d at 514 ("Without some objective measurement of Anderson's functional limitations, Cytec had no way to determine whether his concentration was impaired to the point that he could not perform his job.") (citations omitted). In *Anderson*, the Fifth Circuit cited a similar case from the First Circuit, where the court found that an insurance company did not abuse its discretion when it "was willing to accept that [the claimant] suffered from the illnesses she reported to her doctors. . . . [but] wanted objective evidence that these illnesses rendered her unable to work." *Id.* (quoting *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 16-17 n.5 (1st Cir. 2003)). The First Circuit further explained: "While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis." *Boardman*, 337 F.3d at 17. The First Circuit found substantial evidence to affirm a denial of disability where none of the claimant's specialists over a period of two years indicated any limitations or restrictions based on objective findings. *Id.*

Burrell bore the burden to demonstrate his disability under the terms of the LTD plan, Dkt. 38-2 at 39 (App. 427), and he bears the burden here to demonstrate that MetLife's decision was not supported by substantial evidence, *Nichols*, 924 F.3d at 808. He argues that MetLife abused its

discretion in several ways. First, he argues that Metlife "focused entirely on [his] physical limitations while largely ignoring his inability to focus and concentrate." Dkt. 42 at 7; *see also id.* at 8-9. The record contradicts that argument. MetLife's experts summarized Burrell's medical documentation in detail, including reports that he struggled with fatigue and concentration. *See* Dkt. 38-5 at 124-28 (App. 1339-43) (Dr. Parrillo's review); Dkt. 38-2 at 138-49 (App. 526-37) (Dr. Trangle's review). Both Dr. Parrillo and Dr. Trangle also commented on Burrell's reported difficulties with focus and concentration. *See, e.g.*, Dkt. 38-5 at 126 (App. 1341) ("The claimant asserted that he had cognitive impairment, but there was no referral for formal neuropsychological testing."); Dkt. 38-2 at 14 (App. 528) (noting that Dr. Carrasco "did not request a neuropsychological evaluation to evaluate his complaints of impaired memory or concentration"); *id.* at 156 (App. 544) ("None of his providers noted any clinical findings of abnormal speech, thought content, memory, concentration/focus or any abnormal cognitive findings."). Burrell offers no evidence that MetLife failed to consider any portion of his medical file.

Second, Burrell argues that MetLife failed to consider his particular duties as a billing analyst. Dkt. 42 at 8. But because none of Burrell's healthcare providers reported objective clinical evidence that Burrell experienced any functional impairments, it was reasonable that MetLife did not proceed to consider whether he was unable to perform his particular duties.

Third, Burrell argues that MetLife improperly rejected the "totality of his medical records." Dkt. 42 at 10. But the totality of the record is not the standard in the Fifth Circuit.[7] *See Corry*, 499 F.3d at 402 ("We might well assume . . . that the totality of Corry's subjective complaints could suffice to establish substantial evidence of disability; nevertheless, the law requires only that substantial evidence support a plan fiduciary's decisions.") (cleaned up). A district court reviewing

---

[7] Burrell offers no Fifth Circuit authority to support this argument. In fact, his Response to MetLife's Motion for Summary Judgment does not cite a single authority from within the Fifth Circuit. *See* Dkt. 42.

for abuse of discretion is "not supposed to weigh and balance the evidence"; it must only ask whether the plan administrator had "more than a scintilla of evidence to support its decision." *Rittinger*, 914 F.3d at 958-59.

MetLife's two expert physicians, Dr. Parrillo and Dr. Trangle, opined that Burrell's medical records did not provide objective clinical evidence how his symptoms prevented him from working. The Fifth Circuit has found that comparable evidence satisfies the abuse of discretion standard. *Corry*, 499 F.3d at 402 ("[T]he opinions of the three consulting physicians constitute substantial evidence in support of Liberty's determination that Corry has no disability that precludes full-time sedentary work.") (collecting cases). The Court finds that from the medical records that Burrell provided, and based on the opinions of Dr. Parrillo and Dr. Trangle, no reasonable juror could find that MetLife lacked a scintilla of evidence when it concluded that Burrell had not shown that he was disabled under the LTD plan.

### E. Conclusion

Based on the foregoing, because MetLife's long term disability decision is "supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Rittinger*, 914 F.3d at 956 (quoting *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009)). The undersigned therefore **RECOMMENDS** that the District Court **GRANT** MetLife's Motion for Summary Judgment (Dkt. 37).

### VI.    Burrell's Motion for Summary Judgment[8]

Burrell asks the Court to either "remand this case for further proceedings consistent with this opinion" or award Burrell the value of his accrued LTD benefits. Dkt. 39 at 25. He argues that MetLife abused its discretion by (1) requiring objective medical evidence for chronic fatigue

---

[8] As discussed above, the Court construes this as a motion for partial summary judgment because Burrell addresses only MetLife's liability. *See* Section III *supra*.

syndrome, (2) ignoring evidence that the Social Security Administration ("SSA") found Burrell's records sufficient to establish disability, (3) relying on flawed expert reports, and (4) failing to consider Burrell's ability to perform his specific occupation as a Billing Analyst. Finally, Burrell argues that MetLife failed to comply with the ERISA notice requirements.[9] In support of his motion, Burrell cites the same disability claim files attached to MetLife's Motion for Summary Judgment. He submits no additional exhibits, but does attach an SSA Notice of Award to his reply brief. Dkt. 44-1. MetLife objects to that exhibit, as discussed *infra*. Dkt. 45.

### A. Standard of Review

Burrell argues that this Court must review his LTD claim de novo because the discretionary clause in the LTD plan is invalid. Dkt. 39 at 22-23. The Court addressed and rejected that argument in Section V(A) *supra*. Burrell offers no reason to depart from that analysis. For the reasons detailed above, the abuse of discretion standard applies here.

### B. Conflict of Interest

Burrell recites case law for the rule that when an entity both determines whether an employee is eligible for benefits and pays benefits out of its own pocket, "this dual role creates a conflict of interest," and "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits . . . [but] the significance of the factor will depend upon the circumstances of the particular case." *Glenn*, 554 U.S. at 108. Burrell, however, offers no evidence or argument how this conflict might have affected MetLife's claim determination. The Fifth Circuit has noted that the Supreme Court's holding in *Glenn* "directly repudiated the application of any form of heightened standard of review to claims denials in which

---

[9] Burrell also argues that MetLife improperly withheld four expert opinions from him. Dkt. 39 at 23. The parties' subsequent briefing resolved this issue. Burrell's argument was the result of an administrative error. Dkt. 44 at 2.

a conflict of interest is present." *Anderson*, 619 F.3d at 512 (quoting *Holland*, 576 F.3d at 247 n.3); *see also Glenn*, 554 U.S. at 123. Where there is substantial evidence supporting the denial of benefits, "the impact of a structural conflict may be 'clearly outweighed.'" *Nichols*, 924 F.3d at 813 (quoting *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 515 (5th Cir. 2013)). Any conflict of interest is not a significant factor if a claimant fails to come forward with any evidence that the administrator's conflict of interest influenced its benefits decision. *Id.* Because Burrell offers no evidence that a conflict of interest influenced MetLife's benefits decision, the Court finds that any conflict of interest arising from MetLife's dual role is not a significant factor here.

### C.  Whether MetLife Abused Its Discretion

Burrell raises four reasons why MetLife abused its discretion, two of which the Court considered and rejected in the discussion of MetLife's Motion for Summary Judgment.

#### 1.  Requiring objective medical evidence for chronic fatigue syndrome[10]

Burrell argues that because "it is well known that chronic fatigue syndrome is defined by the absence of objective medical evidence," MetLife imposed an "impossible burden" to qualify for coverage. Dkt. 39 at 11-12. Burrell cites no Fifth Circuit authority for this argument. Instead, he points to a case from the Western District of Pennsylvania and an unpublished opinion by the U.S. Court of Appeals for the Third Circuit. *See id.* at 11 n.13 (citing *Lamanna v. Special Agents Mut. Benefits Ass'n*, 546 F. Supp. 2d 261, 299 (W.D. Pa. 2008) (quoting *Lemaire v. Hartford Life & Acc. Ins. Co.*, 69 F. App'x 88, 93 (3d Cir. 2003) ("To require 'objective' medical evidence to establish the etiology of chronic fatigue syndrome, which is defined by the absence of objective medical evidence . . . creates an impossible hurdle for claimants and is arbitrary and capricious under the heightened standard we apply in this case."))).

---

[10] This argument is also addressed in Section V(D) *supra*.

The Fifth Circuit is not silent on this question. In this Circuit, a plan administrator does not abuse its discretion when it relies on an independent expert's opinion that a claimant has not offered objective clinical proof of functional limitations that indicate a disability. *Anderson*, 619 F.3d at 513 (5th Cir. 2010). Furthermore, "[a] plan administrator does not abuse its discretion by making a reasonable request for some objective verification of the functional limitations imposed by a medical or psychological condition, especially when the effects of that condition are not readily ascertainable from treatment and therapy notes—as in this case and analogous cases involving, for example, chronic fatigue syndrome." *Id.* at 514; *see also Corry*, 499 F.3d at 401 (affirming that opinions of three consulting physicians that no objective evidence supported plaintiff's disability claim based on chronic fatigue syndrome and fibromyalgia, among other conditions, constituted substantial evidence to support denial of her disability claim). The Fifth Circuit does not require Burrell to prove an unprovable diagnosis; it requires him to provide "some objective measurement of [his] functional limitations." *Anderson*, 619 F.3d at 514.

### 2. Ignoring evidence that the Social Security Administration found Burrell's records sufficient to establish disability

Burrell argues that MetLife failed to adequately address the fact that the SSA awarded him disability insurance benefits. Dkt. 39 at 15. On this point, Burrell again offers no comment on the applicable law in the Fifth Circuit, citing only Ninth Circuit authorities. *See* Dkt. 15 at 10. In the Fifth Circuit, failure to address a contrary SSA award can suggest procedural unreasonableness in a plan administrator's decision that justifies giving more weight to a conflict of interest. *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 471 (5th Cir. 2010) (citation omitted). A plan administrator, however, does not abuse its discretion where it acknowledges an SSA award but denies benefits based on different eligibility criteria. *See Hayes v. Dearborn Nat'l Life Ins. Co.* 744 F. App'x 218, 222-23 (5th Cir. 2018).

In this case, there was no record of an SSA award in Burrell's LTD claim file and Burrell attached no evidence of an award to his Motion for Summary Judgment. The only evidence of an SSA decision in Burrell's LTD claim file is a denial: Burrell advised MetLife on March 29, 2016 that his application for Social Security disability insurance was denied. Dkt. 38-6 at 79 (App. 1570). Therefore, at the time of MetLife's claim determination, there was no evidence in his claim file that the SSA found his records sufficient to establish disability.

In his reply to MetLife's response, Burrell for the first time attached evidence of an SSA award. Dkt. 44-1. The Notice of Award is dated November 29, 2017, and states that Burrell is entitled to disability benefits from the SSA "beginning June 2016." *Id.* at 1. MetLife objects that this exhibit is not a part of the administrative record and was not considered with Burrell's LTD claim because it was issued after MetLife upheld its determination denying the claim and after MetLife's last correspondence from Burrell's counsel on September 19, 2017. *See* Dkt. 45; Dkt. 38-2 at 66-67, 97 (App. 454-55, 485). Burrell responds that he "strongly believes the record is incomplete without this exhibit" and that MetLife "has been aware of Plaintiff's disability status with the Social Security Administration as Plaintiff stated this fact in its [sic] amended complaint." Dkt. 46 at 1 (citing Dkt. 12 ¶¶ 35-36).

The Court's review of an ERISA claim determination is limited to the administrative record:

> Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim. Thus, the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it.

*Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000) (citation omitted). Because a district court's review of a claim determination is limited to the administrative record, a Social Security disability benefits award does not render a contrary determination an abuse of discretion where there is no evidence that the SSA decision had been issued at the time the plan administrator determined a claimant was ineligible for benefits. *Marrs v. Prudential Ins. Co. of Am.*, 444 F. App'x 75, 77 (5th Cir. 2011).

### 3. Relying on flawed expert reports

Next, Burrell argues that MetLife's experts wrongly required objective evidence from him, and that MetLife "improperly rejected the reports of [his] treating physicians and the totality of his medical records in favor of paper review reports." Dkt. 39 at 16.[11] Burrell cites 17 legal authorities in support of this argument, none from the Fifth Circuit.[12] *See* Dkt. 39 at 15 nn.19-20 & n.29.

This is the same argument that the Court considered and rejected in Section VI(C)(1) *supra*. Burrell's criticisms of MetLife's expert physicians suggest a misunderstanding of their role in his LTD application, as well as his burden of proof. MetLife had no duty to conduct a physical examination of Burrell. *See Truitt*, 729 F.3d at 510 (stating that the court's decision in *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 298 (5th Cir. 1999) (en banc), "forecloses imposing such

---

[11] Specifically, Burrell argues that Dr. Trangle failed to examine him, required objective evidence for chronic fatigue syndrome despite the absence of any objective diagnostic test, and "failed to attribute [his] symptoms to CFS." Dkt. 39 at 17. He contends—as he did in response to MetLife's Motion for Summary Judgment—that Dr. Parrillo "failed to consider Mr. Burrell's own occupation and failed to give proper weight and consideration to credible complaints of his inability to focus and concentrate." *Id.* at 19. And he repeats his argument that MetLife's consultants "overwhelmingly based their conclusions on the lack of 'objective clinical evidence to support Mr. Burrell's 'subjective complaints.'" *Id.* at 19-20.

[12] Burrell cites *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003), for the rule that "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Dkt. 39 at 16 n.20. He omits the subsequent sentence: "But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Nord*, 538 U.S. at 834. This case does not assist him.

a duty to investigate on a plan administrator"). Burrell bore the burden to demonstrate that he qualified for benefits under the terms of the LTD plan. Dkt. 38-2 at 39 (App. 427) (requiring a claimant to submit proof that the person has satisfied the benefit conditions and requirements). Burrell offers no factual reason and no binding authority to find that MetLife's expert opinions were not substantial evidence to support the claim determination.

### 4. Failing to consider Burrell's ability to perform his specific occupation

Burrell contends that MetLife failed to consider his ability to perform his specific job as a Billing Analyst. The Court addressed this argument in Section V(D) *supra*. Because none of Burrell's healthcare providers reported objective clinical evidence that Burrell experienced any functional impairments, the Court finds that it was reasonable that MetLife did not proceed to consider whether he was unable to perform his particular duties.

### D. Whether MetLife Violated ERISA Notice Requirements

Finally, Burrell alleges that MetLife violated ERISA notice requirements. Federal regulations require that "the format of [an ERISA] summary plan description must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries. Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant." 29 C.F.R. § 2520.102-2(b). Burrell asserts that MetLife provided a summary of benefits to him that does not have the "exact language" from the LTD policy, "omitted crucial policy language," and that the language in the summary "unlawfully and unfairly misinterpreted the definition of disability to one that heightens the apparent burden" to quality for the LTD benefits. Dkt. 39 at 24. Burrell does not cite the summary. MetLife responds that Burrell is referencing the Summary Plan Definition ("SPD"), which is a summary of benefits and not a controlling agreement. Dkt. 41 at 8 (citing Dkt. 38-2 at 19 (App. 407) (LTD Plan definition); *id.* at 239 (App. 627) (SPD definition)).

Burrell does not explain how the allegedly altered summary materially changed the definition of disability or his burden of proof. The Court concludes that Burrell has not shown that MetLife failed to comply with ERISA's notice provisions.

### E.  Conclusion

Burrell has not shown that MetLife failed to base its claim decision on substantial evidence and has not met his burden to show that no reasonable juror could find in favor of MetLife. The undersigned therefore recommends that the District Court **DENY** Burrell's Motion for Summary Judgment (Dkt. 39).

## VII.    RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Deloitte's Motion for Partial Summary Judgment on Burrell's claim for benefits under the Short Term Disability plan. (Dkt. 34); **GRANT** MetLife's Motion for Summary Judgment on Burrell's claim for benefits under the Long Term Disability plan (Dkt. 37); and **DENY** Burrell's Motion for Summary Judgment (Dkt. 39).

**IT IS FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## VIII.   WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds

of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on February 3, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE